IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAIMLER TRUST, | ) |
| Plaintiff, | ) No. 22-cv-01082 |
| vs. | ) |
| | ) **JURY TRIAL DEMANDED** |
| CHING KUI WENG, | ) |
| Defendant. | ) |

**BRIEF IN REPLY TO PLAINTIFF, DAIMLER TRUST'S MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION TO DISMISS**

.     **ARGUMENT AND RESPONSES TO PLAINTIFF'S MEMORANDUM OF LAW**

    **A.**    **PRELIMINARY STATEMENT**

Since Plaintiff resorts to adages and colorful expressions in its Preliminary Statement, Defendant responds in kind by saying, My, how the worm has turned. In the opening Nature of the Action paragraph of Plaintiff's complaint Plaintiff stated: "The vehicle in question was leased by a non-party customer of Plaintiff, who improperly turned over possession of the vehicle to a used car dealer, who washed the title and sold it to Weng." Plaintiff also used the phrase "crooked dealer" in reference to the sellers of the vehicle. Nowhere in Plaintiff's Complaint did Plaintiff aver that Defendant was complicit in the transaction between Chandler and Dancy Auto Group (DAG) that deprived Plaintiff of its vehicle. However, now that Plaintiff has defended upon statute of limitations grounds and made strong arguments for dismissal of the action, Plaintiff

1

sees fit to brand Defendant as Public Enemy Number One.

What Plaintiff's Preliminary Statement truly reveals is a rather transparent attempt to influence this court by trite adages appealing to some twisted sense of justice favoring Plaintiff at the expense of Defendant. Using such adages as just like there's no such thing as a free lunch, there too is no such thing as a free car, Plaintiff spuriously contends that Defendant has been made whole by a Restitution Order, as if such an order is as Good as Gold instead of, most frequently, worth little more than the paper it is printed upon. Pray tell, if the "crooked dealers" are flush with cash and resources to pay off a restitution order why then did Plaintiff not sue these convicted criminals in a court of law? After all, their civil liability to Plaintiff was effectively sealed by their guilty plea.

Instead, Plaintiff went after the supposedly easier and far wealthier party, Wilson Chandler, the professional basketball/former NBA player who started this entire sordid affair by - perhaps quite innocently - "trading in" the vehicle to the "crooked dealers." Having "settled" that case against Chandler, (after he defended in federal court in the district of New Jersey), Plaintiff asserts that it has not been made whole and seeks the return of the vehicle or additional recompense from Defendant, who paid market value for the vehicle after it was put in the stream of commerce via an Auto.com listing. Why has Plaintiff not revealed in its complaint the outcome of that suit against Wilson Chandler?   And having recovered from Chandler and now proceeding against Defendant for return of the vehicle, is it not Plaintiff that seeks to have it's cake and eat it too?

To prejudice this Court, Plaintiff makes overtly false claims which it knows to be

2

false, even if the falsities have yet to be disproven in court. They include the repeated proposition that Defendant has been "made whole" by the restitution order when there is no evidence of that at all and even though Plaintiff has been informed of this fact. Would Plaintiff not be able to get documentation from the clerk of courts that Tyrone Hill had paid approximately $100,000 in restitution to the court for Defendant's benefit?

Plaintiff further avers now that Defendant never paid for the car after acknowledging in its complaint that Defendant bought the vehicle. Pray tell, what dealership lists a vehicle on the internet and delivers it to an out-of-state resident for no money? What "crooked dealers" effectively steal a car only to then give it away for free? And why would the Federal District Court for the Eastern District of New York order restitution if Defendant had not paid any money for the vehicle? Further still along these lines, as Dancy was investigated by the FBI and the principals prosecuted, if Defendant were complicit in the fraud why did he avoid prosecution? In any event, attached to this brief are documents showing the contrary to Plaintiff's blatant misinformation. (See attached documents, pricing recap, auto.com ad, deposit check.)

The reality is, Plaintiff understands it acted dilatorily and failed to diligently pursue its rights. Plaintiff knows that under any reasonable application of the law its actions are in fact time-barred. Plaintiff knows it waited too long to seek redress versus Chandler and that having failed to gain sufficient compensation there, has turned to Defendant well after the passage of the requisite limitations period. Plaintiff knows that it must argue for tolling of the statute, but knows that its arguments for tolling the statute of limitations are specious and transparent. Plaintiff is fully aware that its only hope of prevailing is to get this Court to ignore the law and accept its twisted portrayal of Plaintiff

as innocent victim and Defendant as an evil, masterful manipulator who, due to his chicanery, has gained a great windfall in the form of a "free car." This Court is clearly above such amateurish manipulations and Defendant is fully confident of this Court's ability to see through Plaintiff's transparent arguments to evade the statute of limitations.

### B.    ACTUAL COMPLETE NOTICE OF ALL RELEVANT FACTS

Significantly, attached to Plaintiff's Memorandum of Law in response to Defendant's motion to dismiss is a report from the Pennsylvania Department of Transportation showing the vehicle was then titled to Defendant. The report contains Defendant's address in the Greater Pittsburgh area. The report is addressed to Plaintiff and the date the report was issued is listed plainly upon the document, **March 6, 2020** – more than two years and four months prior to filing the instant suit. In combination with the other events detailed in Plaintiff's complaint, Plaintiff had actual knowledge of all the information necessary to file suit against Defendant no later than early March, 2020. As such, and subject to the further discussion laid out below, each count of Plaintiff's complaint subject to a two-year statute of limitations is unequivocally time-barred without the need to consider any other concepts re: tolling the limitations period.

### C.    DISCOVERY RULE

Plaintiff argues application of the Discovery Rule even as most of Defendant's analysis in his Brief granted Plaintiff the benefit of the Discovery Rule. The difference in positions is found in the adage give one an inch and he'll try to take a mile.

Plaintiff's actual date of injury was either the date Chandler delivered the vehicle to DAG, or when DAG delivered the vehicle to Defendant. These events occurred in

November/December 2015 and Plaintiff's right to sue was then complete. Defendant's analysis of the statute of limitations centered upon the conviction of Tyrone Hill in March, 2018, as a date where Plaintiff could unequivocally be charged with knowing all required facts to file suit. However, in reality, Defendant's original treatment of the issue was too forgiving.

Plaintiff's date of notice of its claim is actually centered upon the failure of Chandler to return the vehicle at the expiration of the lease, which was on or about November 19, 2017. On that date, contrary to the lease agreement, Chandler neither purchased the vehicle nor returned it to Plaintiff.1 Even if one were to deem it reasonable to allow a week or two for a late return of the vehicle, at some time in December 2017 it was completely clear to Plaintiff that its right to return of the vehicle or payment of the residual value had been violated. Nevertheless, Plaintiff argues that under the Discovery Rule the statute of limitations would have to await other inquiries such as confirmation that Defendant was in possession of the Vehicle and that he indeed intended to wrongfully maintain possession of the vehicle. This is a blatant mischaracterization of the Discovery Rule in Pennsylvania.

The discovery rule "provides that **where the complaining party is reasonably unaware that his or her injury has been caused by another party's conduct**, the discovery rule suspends, or tolls, the running of the statute of limitations." *Gleason v. Borough of Moosic*, 609 Pa. 353, 15 A.3d 479, 484 (2011) (emphasis added). "The very

---

1 Plaintiff does not indicate the length of the lease in its complaint here, but did so in the action against Wilson Chandler. *See*, Complaint, MBFS v. Chandler, 2:19-cv-15716, at ¶ 10. Perhaps this omission was intentional so as to obscure from this Court the fact that Plaintiff would be aware that the vehicle had not been either purchased or returned some four years and eight months prior to the filing of the instant suit.

5

essence of the discovery rule in Pennsylvania is that it **applies only to those situations where the nature of the injury itself is such that no amount of vigilance will enable the plaintiff to detect an injury**." *Burton-Lister v. Siegel, Sivitz & Lebed Associates*, 798 A.2d 231, 237 (Pa. Super, 2002). Based upon these recitations of law, the Discovery Rule could be reasonably argued to have tolled the period between the sale of the vehicle by DAG to Defendant until the end date of the lease, as Plaintiff would likely be unaware that its rights in the vehicle had been violated. However, once the lease expired and Chandler failed to return the vehicle or purchase it, Plaintiff was on notice that its rights had been violated at the hands of another.

Under the Discovery Rule, the limitations period is tolled only until such time a party is aware or should be aware that he/she has suffered a harm caused by another. The Discovery Rule does not toll the limitations period for matters such as confirmation of the whereabouts of the vehicle and Defendant's intent vis-à-vis the vehicle. To the contrary, under the discovery rule, "the commencement of the limitations period is grounded on 'inquiry notice' that is tied to 'actual or constructive knowledge of at least **some form of significant harm** and of a factual cause **linked to another's conduct**, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause.'" *Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018).

What Plaintiff highlights as arguments for the tolling of the limitations period merely demonstrates its own failure to exercise diligence to inform itself as to the additional aspects of its cause of action. However, "one of the overarching tenets in this area of our jurisprudence [is] the responsibility of a party who seeks to assert a cause of action against another to be reasonably diligent in informing himself of the facts upon which his

6

recovery may be based." *Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850, 861 (Pa. 2005). Additionally, as noted in *Pounds v. Lehman*, 558 A.2d 872, (Pa. Super. Ct. 1989): "[o]ne purpose of the two year statutory limitations period is to allow the prospective plaintiff an opportunity **to investigate the relevant facts of the cause of action**. Under Cathcart, **the limitations period begins to run upon ascertaining knowledge of an injury and the fact that it has been caused by a third party**. It does not appear that under Cathcart one needs to know the precise party responsible for the injury for the period to begin running."

Plaintiff's complaint acknowledges that Defendant was identified in the underlying criminal prosecution of Hill and Dancy as a purchaser of the vehicle. However, it is not completely clear when Plaintiff was alerted of the criminal activity/investigation. In response to Plaintiff's suit against Wilson Chandler, Chandler replied in its Answer:

> None of this is news to Plaintiff as **Plaintiff was told by the U.S. Attorneys' Office in 2018** that, in 2015, Defendant legitimately turned the Vehicle in to DAG with the understanding that DAG would return the car to Plaintiff or continue to make the payments, and that Hill resold the car to an innocent third-party and then converted the proceeds to his personal use. As discussed, Hill was arrested, indicted and pled guilty to this conduct. Despite this knowledge, Plaintiff continued to harass Defendant by repeatedly seeking to repossess a car which he no longer had.

See, Amended Answer, MBFS v. Chandler, 2:19-cv-15716, at p 8. In response to Chandler's assertions, Plaintiff admitted "the allegations contained in ¶ 1 of Chandler's Counterclaim **to the extent MBFS was aware of an investigation by the USAO and FBI relating to the vehicle at issue in this action**." MBFS v. Chandler, 2:19-cv-15716, Plaintiff's Answer to Counterclaims with Affirmative Defenses, ¶ 1.

More significantly, for Discovery Rule purposes, it is abundantly clear that had

7

Plaintiff acted sooner and with due diligence it would have discovered the facts necessary to be apprised of the criminal investigation and the fact that Defendant was the purchaser of the vehicle. Chandler's stance from the beginning was that he "traded in" the vehicle to a dealership with apparent authority to act for Plaintiff. This defense was asserted continuously by Chandler and once Plaintiff sued Chandler, Chandler explained, in legal documents, that he delivered the vehicle to Dancy in 2015 in exchange for a new vehicle. It is unclear if this was Plaintiff's first moment of awareness of this fact, or whether Chandler had informed Plaintiff of this earlier in communications prior to the filing of suit, or whether, as Chandler averred, Plaintiff had been contacted by the FBI during the investigation. What is clear, however, was that Plaintiff did not file suit against Chandler until July 23, 2019. This was a full 18+ months after Plaintiff was aware of the loss and the fact that it was caused by another's conduct.

While Plaintiff was not legally obligated to act sooner against Chandler, the same voluntary delay cannot be used as a basis to toll the statute of limitations against the party then in possession of the vehicle. In such cases, a self-imposed ignorance is not bliss. The fact that the vehicle had been delivered to Dancy was asserted by Chandler in the initial stage of the prior litigation and, thus, Plaintiff could have discovered all the facts necessary to identify Defendant by the time the prosecution of Hill concluded in March of 2018 had it simply acted promptly, either informally or formally, against Chandler.

The Discovery Rule is not a legal principle designed to permit a party to sit on its hands until it is good and ready to investigate, it is a principle to rescue those litigants

8

who could not have discovered the injury or its cause despite the exercise of due diligence. The record clearly demonstrates the failures of Plaintiff to act with due diligence. The record reveals as well that – assuming it was not already aware - it would have been adequately apprised of the necessary facts to bring suit against Defendant had it acted with diligence in response to Chandler's breach of the lease agreement. Thus, proper application of the Discovery Rule only tolls the limitations period until November 19, 2017, when Plaintiff was aware of the injury and that it was caused by a third-party, leaving all counts time-barred.

### D. FRAUD/CONCEALMENT

Plaintiff next posits that the limitations period should be found tolled due to Defendant's fraud and/or concealment. This assertion is transparently laughable.

The law with respect to fraud or concealment holds that:

> If through fraud or concealment the defendant causes the plaintiff to relax his or her vigilance or deviate from his or her right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations. The defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied. Mere mistake or misunderstanding is insufficient.

*Lange v. Burd*, 800 A.2d 336, 339 (Pa.Super.2002).

As noted above, Plaintiff was unequivocally on notice that Defendant possessed the vehicle under a title issued by PENNDOT no later than early March, 2020. Plaintiff had been informed that the vehicle had been sold to an innocent purchaser by Dancy earlier in the Chandler litigation. The FBI and/or the US Attorney's Office was able to find Defendant while investigating Dancy and Hill. Throughout this ordeal, if Defendant has "hidden" himself, he did so only in "Plain Sight."

9

Defendant has consistently asserted its rights to the vehicle because he paid fair value for the vehicle to an automobile dealership holding itself out as having a right to sell the vehicle. Defendant's assertion to title has been open and notorious throughout. Nothing Defendant did, or did not do, should have impeded Plaintiff from understanding its rights vis-à-vis the vehicle, nor would it have impeded Plaintiff from filing suit against Defendant. Even if, for purposes of limitations analysis, a criminal state of mind is imputed to Defendant, it would change nothing. As with conversion/replevin every fraud involves scienter. Under Plaintiff's argued interpretation of the law there would never be a statute of limitations in such cases because fraud was involved, but that is simply not the law.

Similarly, Plaintiff's assertion that Defendant's obtaining a title from PENNDOT somehow restarts the limitations period is a transparent attempt at misdirection. Even if there was something fraudulent about the obtaining of title, those actions in no way impeded Plaintiff from asserting its rights to the vehicle. Indeed, Plaintiff did not hesitate to file suit against Chandler during a portion of the relevant time. In doing so, Plaintiff asserted its rights in the vehicle. Additionally, Defendant still held the same title when Plaintiff chose to file the present suit. Clearly, the acquiring of a title from PENNDOT had no bearing on Plaintiff's opportunity to sue.

Plainly stated, none of Defendant's conduct – whether termed innocent or fraudulent – impacted Plaintiff's ability to 1) understand its rights and, 2) assert those rights in a court of law. This is simply a transparently specious Hail Mary argument to attempt to overcome Plaintiff's unreasonable failure to act.

### E.   CONTINUING TORT/VIOLATION

Plaintiff's reliance upon the continuing tort theory is even more absurd than arguing fraud/concealment.  Although conveniently not expounded upon, apparently Plaintiff posits that every moment that Defendant remains in possession of the vehicle in question constitutes a new violation of Plaintiff's rights which starts anew the limitations period.  If Plaintiff's position were adopted then a statute of limitations would never run in a conversion or replevin case as there would be continuous "violations" until the property was returned to the rightful owner.  And yet, courts do indeed find such causes of action time barred.  *See*, for instance, *Beltz*, *infra*., a case out of this very Court.

### F.   CONVERSION/REPLEVIN

While discussing conversion/replevin in its Memorandum of Law Plaintiff seemingly "hangs its hat" upon the principle discredited in Defendant's Brief: that a cause of action for conversion/replevin, in all cases, does not accrue until demand for its return has been made.2  As was thoroughly shown in Defendant's Brief, and expounded upon quite clearly by this very Court, both legally and logically, the principle Plaintiff relies upon applies only in circumstances where the initial possession of the personal property was consensual and permissive.  *See, Beltz v. Erie Indem. Co.*, 279 F. Supp. 3d 569, 584 (W.D. Pa. 2017).  As exemplified by the primary case cited by Plaintiff, *Fenton*, these cases frequently deal with art pieces that have been consigned or lent to

---

2 Quite clearly, Plaintiff's present arguments are dictated by necessity.  In arguing that "tolling principles apply" here, Plaintiff implicitly acknowledges that the accrual of the causes of action occurred outside of the statute of limitations.  Thus, unless Plaintiff can somehow convince the court that despite Plaintiff's awareness of the fact that it had been deprived of its vehicle some four years and eight months prior to the filing of suit, and its unequivocal knowledge that Defendant possessed the vehicle, that nonetheless the statute of limitations should be "tolled" until such time as it suited Plaintiff to act in its own interests, it will lose the current legal battle.

11

others for display.

To argue its way around *Beltz* and the other cases cited by Defendant, Plaintiff equates the current circumstances of purchasing a vehicle from a dealership that had acquired it via fraud with the permissive lending of an art piece to another. This is a laughable argument. Although lacking foundation, Plaintiff in its Memorandum of Law postures Defendant as a thief or fraudster. Plaintiff's entire case rests upon the fact that it was defrauded of the vehicle by the acts of Chandler and DAG. The facts set forth by Plaintiff in its complaint never establish that it lent the vehicle to Defendant or even acquiesced in DAG's delivery of the vehicle to Defendant. Indeed, as pleaded, Plaintiff's first point of contact with Defendant was when it sent a letter to Defendant demanding the return of the vehicle. There is nothing in Plaintiff's complaint that would paint Defendant's possession of the vehicle as licensed or with Plaintiff's permission.

As set forth in Defendant's Brief, the case is essentially identical to *Madison Capital Co., LLC v. S & S Salvage, LLC*, 765 F. Supp. 2d 923 (W. D. Ky. 2011), where the Western District Court of Kentucky made the same distinction as did this Court in *Beltz* while noting that to run the limitations period from the date of demand would allow the prospective plaintiff to manipulate the statute of limitations, which is arguably what Plaintiff attempts here. Plaintiff argues that the decisions cited by Defendant are not precedential in the Western District of Pennsylvania. However, the facts of the present case are rather unique and, unfortunately, have not arisen in a reported decision in Pennsylvania. Additionally, the court in *Madison* cited, *inter alia*, CJS for the proposition: "90 C.J.S. Trover and Conversion § 55 (2010) ("If the holding or possession sounds in tort from the beginning, a demand and refusal are unnecessary for the

12

purpose of determining when the statute of limitations begins to run.") *Madison*, at 932. Of course, CJS is a compendium of common law principles and is highly persuasive authority.

In reality, the logic of the *Madison* decision is unassailable and follows the similar principle set forth in *Beltz*.  Moreover, the Western District of Kentucky is not alone on this line of thinking.  Although also discussing a related tort of "wrongful detention" in addition to conversion and replevin, the Supreme Court of Wisconsin, under analogous facts involving a very valuable vintage car, held that the statute of limitations ran from the time the innocent purchaser obtained the stolen vehicle.  *Mueller v. TL90108, LLC*, 390 Wis. 2d 34; 938 N.W.2d 566 (2020).  The court's comments echo those of the Western District of Kentucky:

> Allowing the cause of action to accrue at the time of demand could open the door to manipulation by a plaintiff who may choose when to make a demand based on a potential deadline, providing less certainty to property owners.

*Id.*, at 573.  With respect to the demand issue, the Supreme Court of Wisconsin, like this Court did in *Beltz*, distinguished the circumstance where the initial possession of the property was permissive.  The Court comments: "In other factual scenarios not relevant here, demand may trigger the accrual of a wrongful detention claim. See Capitol Sand, 71 Wis. 2d at 231-32 (noting a demand may trigger a wrongful detention claim **where the initially lawful possession becomes unlawful by exceeding the owner's authorization**)." *Id.*, at n. 10.

The law, as well as logic, indicates that a demand for return of the vehicle plays no part in the limitations analysis under the facts of the present case.

**CONCLUSION**

A measured review of the law reveals that all counts are time-barred. Moreover, Count Five fails to state a cause of action upon which relief can be granted and should be stricken with prejudice. Lastly, the plea for punitive damages and attorney's fees are without any basis in law or fact that would permit the awarding of either. Thus, the plea for these damages should be stricken.

                                                  Respectfully submitted,

                                                  */s/ Robert Paul Vincler*
                                                  Robert Paul Vincler,
                                                  *Attorney for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAIMLER TRUST,           )<br>                          )<br>     Plaintiff,          )<br>                          )<br>vs.                       )<br>                          )<br>CHING KUI WENG,          )<br>                          )<br>     Defendant.           )<br>                          )<br>                          ) | No. 22-cv-01082<br><br>**JURY TRIAL DEMANDED** |

## **CERTIFICATE OF SERVICE**

      I, the undersigned, hereby certify that on May 10th, 2023, I electronically filed the foregoing BRIEF IN REPLY TO PLAINTIFF, DAIMLER TRUST'S MEMORANDUM OF LAW OPPOSING DEFENDANT'S MOTION TO DISMISS with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to the following:

Louis J. Kroeck, IV
LJK Law
1200 Sarah St
Pittsburgh, PA 15203
lkroeck@gmail.com

Nicholas A. Duston
Norris McLaughlin, P.A.
400 Crossing Blvd, 8th Fl
Bridgewater, NJ 08807
naduston@norris-law.com

                              */s/ Robert P. Vincler*
                              Robert P. Vincler, Esq.
                              PA ID No. 20226
                              564 Forbes Ave Ste 1006
                              Pittsburgh, PA 15219
                              (412) 391-0899
                              robertpaulvincler@hotmail.com
                              *Attorney for Defendant*